Rosenberg, Appellant, *v.* Cohen.

508

Argued April 22, 1952. Before DREW, C. J. STERN, STEARNE, JONES, BELL, CHIDSEY and MUSMANNO, JJ.

*Edwin Fischer*, with him *Samuel Moonblatt*, for appellant.

*Charles J. Hepburn, Jr.*, with him *Riely, Hepburn, Earle & Wetherill*, for appellees.

Opinion by Mr. Justice Musmanno, May 26, 1952:

This is an appeal from the dismissal by the court below of a bill in equity to compel defendants to convey certain premises to the plaintiff and to account for all profits and issues therefrom after September 22, 1945.

It is the contention of the plaintiff-appellant, Joseph L. Rosenberg, that on September 22, 1945, he engaged the defendant Samuel A. Cohen to purchase for him certain premises on Hazel Avenue in Philadelphia for the price of $18,000, and that he delivered to the defendant on September 27, 1945, the sum of $2,000 to be used as a deposit for that purchase. On October 22, 1945, the defendant returned the money, advising that the owner would not accept the plaintiff's offer. The plaintiff maintains that this constituted a deception on the part of the defendant since, on October 9, 1945, the defendant negotiated to purchase the property for his own use and purposes. And that, in order to deprive the plaintiff of his rights, the defendant arranged to have the premises transferred for $18,000 to one Dorothy Chester, a straw woman; and that Dorothy Chester conveyed the property to another straw person Louis Bernstein for the consideration of $20,000; that Cohen then arranged another straw transaction whereby for a consideration of $100 the premises were transferred to one Paul Tannenbaum, and that this was then succeeded by still three or more straw proceedings until the property finally arrived in the hands of Selma T. Pastor, Isabel Bedford and Sylvia M. Cohen, all of whom are acting in behalf of Samuel A. Cohen.

The plaintiff seeks to have these various transactions declared fraudulent to the end that the property may be conveyed to him, upon payment of $18,000 plus title and recording charges.

The defendant admits he is now the beneficial owner of a one-third interest in the property, but maintains

that this interest was acquired in good faith by him in the ordinary course of his business of real estate broker and dealer. He denies that he owed the plaintiff, who is also a real estate broker and dealer, any duty except to submit to the owner of the property his offer of $20,000 with the condition of a purchase money mortgage in the amount of from $12,000 to $15,000. The defendant asserts that the owner refused to sell the property to Rosenberg subject to a mortgage, and that is the reason Cohen returned the $2,000 deposit.

Though the issue was not raised in the court below, plaintiff now contends, on appeal, that the defendant Cohen committed fraud by using the plaintiff's money to purchase the real estate and in concealing from him the fact that the real estate was purchased for $18,000 and that the deposit money was the plaintiff's.

There was no proof, however, that the defendant Cohen did use the plaintiff's $2,000 in making the deposit on the purchase of the property, except the fact that Cohen received plaintiff's check on September 28, 1945 and deposited it in his account, and that on the same day Cohen drew a check on his account to the order of Louis Hessen, as agent, in the sum of $2,000. Since the status of Cohen's bank account on the pertinent date was not shown, there was no proof that when defendant Cohen drew the $2,000 from his bank account for the said deposit he encroached upon the plaintiff's $2,000.

But the lack of proof as to the use of the plaintiff's funds to purchase the property was not as fatal as was the lack of proof that defendant occupied a fiduciary relation to the plaintiff.

There can be no question that when an agent is instructed to purchase property for his principal he is not permitted, without his principal's knowledge and consent, to become the purchaser of the same

property for himself, and if he does so, even though he use his own funds, he is considered a constructive trustee for his principal who may compel a conveyance upon tender of the amount of the purchase price plus reasonable compensation. One employed to negotiate for another cannot take advantage of that opportunity to obtain a conveyance for himself. *Schrager v. Cool,* 221 Pa. 622, 625; *Kern, et al. v. Smith, et ux.,* 290 Pa. 566; *Casari, et al. v. Victoria Amusement Enterprises, Inc., et al.,* 327 Pa. 382.

These principles in the law of agency are simple and they are adamantly imbedded in the structure of our jurisprudence. The difficulty in the instant case, however, as pointed out by the able and learned Chancellor who heard the evidence, "is the application of the well established principles of law to the insufficient proofs in the record. It is not clear that the relationship of principal and agent existed between the plaintiff and defendant, Samuel A. Cohen, nor in fact is it clear that any fiduciary or confidential relationship was present between them. See Hamberg v. Barsky, et al., 355 Pa. 462."

As is stated in the Restatement of Agency, Sec. 1, in the comment on Subsection (1) : "The relationship of agency is created as the result of conduct by the parties manifesting that one of them is willing for the other to act for him subject to his control, and that the other consents so to act. The principal must in some manner indicate that the agent is to act for him, and the agent must act or agree to act on his behalf and subject to his control.

". . . Agency results only if there is an agreement for the creation of a *fiduciary relationship* with control by the beneficiary." (Italics supplied)

In spite of all the contradictory evidence in this case, one fact stands out quite clearly and that is that

the condition laid down by the plaintiff, namely, the acceptance of a purchase money mortgage, could not be met. Regardless of agency or relationship, there can necessarily be no sale if the seller refuses to meet the buyer's terms, or vice versa. The learned Chancellor in his comprehensive adjudication said: "The admitted reluctance and unwillingness of the plaintiff Rosenberg to pay the $20,000 in cash eliminated him as a prospective purchaser. We do not find that it was incumbent upon the defendant Cohen under all the circumstances to exhaust the mortgage market in order to ascertain whether or not he could obtain the desired $12,500 under the terms and conditions specified by the plaintiff in order that he could present an offer which would be accepted. Moreover, the evidence in this record does not demonstrate that the defendant Cohen was employed by the plaintiff to do anything. At most, by accepting the deposit in the sum of $2,000 Cohen agreed to submit plaintiff's conditional counter offer for the purchase of the property, which was unaccepted. It might well be inferred that at this stage of the transaction the joint venturers decided to acquire this property themselves and to ascertain whether they could find suitable funds for investment in a mortgage on this property that would be acceptable to them. The essential element, in our opinion, that is lacking is the plaintiff's inability to establish by *sufficient proof the status of the defendant Samuel A. Cohen as his agent.*" (Italics supplied)

A reading of the record more than justifies the Chancellor's findings that the plaintiff did not prove Samuel A. Cohen to be his agent with the scope of authority contended for.

Although the proofs fail to establish Cohen as an agent, we are not satisfied that he acted with entire candor and forthrightness in his dealings with the

plaintiff. The fact that one of the present title holders shares offices with the defendant, and the circumstance of the great number of straw transactions through which the property title moved, inevitably raise a suspicion hard to down. The learned Chancellor uniquely and accurately phrases it when he said: "Suspicion which may rise to the dignity of an inference points to the defendant Samuel A. Cohen as the originator of a scheme to manipulate this property." This inference indeed runs through the numerous transactions like a wisp of smoke, but in spite of all the straw through which it passes, it never quite breaks into the flame of deception and wrongdoing.

We are, therefore, affirming the decree of the Court below and in doing so accept its findings of fact and conclusions of law as being amply supported by the record.

Decree affirmed with costs to be paid by appellant.